# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| NETROADSHOW, INC., | * |
| | * |
| Plaintiff, | * |
| | *   CIVIL ACTION FILE NO. |
| | * |
| v. | *   1:23-cv-05697-ELR |
| | * |
| LISA CARRANDI, | *   **JURY TRIAL DEMANDED** |
| | * |
| Defendant. | * |
| | * |

## PLAINTIFF'S SUPPLEMENTAL MOTION FOR A PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff, NetRoadshow, Inc., ("NetRoadshow" or "Plaintiff"), pursuant to Federal Rule of Civil Procedure 65, hereby moves for a Preliminary Injunction and submits the following Memorandum of Law in Support, showing the Court as follows:

### I.  INTRODUCTION AND FACTS

NetRoadshow is an Atlanta-based company that provides an electronic roadshow platform over the internet for major investment banking customers. Carrandi was an employee of NetRoadshow from 2005 until 2023, beginning in the role of Account Manager and eventually resigning as NetRoadshow's Senior Vice President, Strategic Accounts.

In 2005, Carrandi and NetRoadshow executed an Employee Agreement ("Agreement"). A true and correct copy of the Agreement is attached to the Complaint as Exhibit A. Per the Agreement, Carrandi agreed not to work for a competitor for one-year post-employment and to protect in confidence the confidential information of NetRoadshow.

Carrandi resigned her employment with NetRoadshow, effective July 31, 2023. Carrandi immediately began working for a competitor of NetRoadshow, Finsight, in violation of her Agreement.

## II. ARGUMENT AND CITATION TO AUTHORITY

### A. Standard For Granting Injunctive Relief

In determining whether to issue a preliminary injunction, the Court must consider whether:

> (1) [the moving party] has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*Forsyth Cnty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (internal quotation marks omitted); *see also Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1290-91 (11th Cir. 2022).

"Likelihood of success on the merits 'is generally the most important' factor." *NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1209 (11th Cir. 2022) (quoting *Gonzalez v. Gov. of Ga.*, 978 F.3d 1266, 1271 n.12 (11th Cir. 2020)).

Here, all four factors weigh heavily in favor of granting injunctive relief. "A district court has broad discretion to grant injunctive relief if the movant shows" the above four factors. *AWP, Inc. v. Henry*, 522 F. Supp. 3d 1294, 1303 (N.D. Ga. 2020); *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Statham,* 243 Ga. 448, 449 (1979)).

Carrrandi agreed in the Agreement that injunctive relief is appropriate if the restrictive covenants in the Agreement were breached. Ex. A ¶ 7. Where, as here, the parties agree in advance that injunctive relief is appropriate to enforce restrictive covenants, "the parties are bound by the form of relief that they agreed to employ to protect such right." *Focus Ent. Int'l, Inc. v. Partridge Greene, Inc.*, 253 Ga. App. 121, 128 (2001); *see also Glob. Payments Inc. v. Green*, 484 F. Supp. 3d 1372, 1383 (M.D. Ga. 2020).

### 1. NetRoadshow is Likely to Succeed on the Merits.

NetRoadshow is likely to succeed on the merits of its causes of action based on Carrandi's blatant breach of contract.

In Georgia, "the elements for a breach of contract claim . . . are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain

3

about the contract being broken." *Norton v. Budget Rent A Car Sys., Inc.*, 307 Ga. App. 501, 502 (2010) (internal quotation marks and citations omitted).

The restrictive covenants in the Agreement are necessary, reasonable, and supported by adequate consideration. The restrictions are narrowly drawn, and only prohibit Carrandi's work for Finsight for a one-year period. Finsight is engaged in the "Business" as that term is defined in the Agreement and is in the "Area" as that term is defined in the Agreement. Accordingly, Carrandi's employment with Finsight places her in breach of the non-competition provision.

Further, Carrandi has retained confidential information in the form of knowledge of NetRoadshow's customers' needs, customers' finances, and NetRoadshow's systems, and "inevitably would use" this information when negotiating with customers of Finsight and managing and strategizing internally at Finsight. *Glob. Payments Inc.*, 484 F. Supp. 3d at 1383. This is a breach of the Agreement.

As will be discussed below, Carrandi's actions have caused extensive harm to NetRoadshow and will continue to cause harm absent relief from this Court. NetRoadshow is thus likely to prevail on its claim for breach of contract.

> **2.    NetRoadshow Has Suffered and Continues to Suffer Irreparable Harm Absent Injunctive Relief.**

Under Georgia law, "the loss of customers and goodwill is an irreparable injury." *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission*

*Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005); *Ferrero v. Assoc. Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991); *Kennedy v. Shave Barber Co.*, 348 Ga. App. 298, 308 (2018); *see also Holland Ins. Grp., LLC v. Senior Life Ins. Co.*, 329 Ga. App. 834, 843 (2014).

Where the plaintiff has lost confidential information by the actions of the defendant, the plaintiff risks immediate and irreparable injury. *See Heartland Payment Sys., LLC v. Stockwell*, 446 F. Supp. 1275, 1285 (N.D. Ga. 2020); *see also Variable Annuity Life Ins. Co. v. Joiner*, 454 F. Supp. 2d 1297, 1304 (S.D. Ga. 2006); *see also TMX Fin. Holdings, Inc., v. Drummond Fin. Servs., LLC,* 300 Ga. 835, 839 n.9 (2017) (holding that a "trial court explicitly balanced the equities when it found that there was a substantial threat that [plaintiff] would suffer irreparable injury in the form of lost customers . . . if an interlocutory injunction is not granted" (internal quotation marks and citations omitted)).

Here, Carrandi's actions are intended to compete directly with NetRoadshow and take clients from NetRoadshow in violation of her contractual agreement. If Carrandi is not enjoined, NetRoadshow faces loss of customers and loss of its confidential information.

### 3. The Threatened Injury to NetRoadshow Outweighs Whatever Damage the Injunction May Cause Defendant.

Time and again, courts have held that where a defendant was found in clear violation of an agreement that provided fair notice of its terms—even if issuance of an interlocutory injunction could harm said defendant—the balance of the equities favored enforcement of the agreement. *Joiner*, 454 F. Supp. 2d at 1305 ("The [defendants] took a calculated risk . . . when they elected to violate the terms of the Agreement rather than seek a declaratory judgment as to the validity of the restrictive covenants."); *Stockwell*, 446 F. Supp. 3d at 1286 ("[A]ny potential harm to [defendant] 'is the result of enforcement of a covenant not to compete to which [he] agreed[,]'"); *Green*, 484 F. Supp. 3d at 1383 ("[T]he law does not permit sympathy to rescue someone from the unfortunate consequences of the deal he struck.").

Here, the balance of the equities strongly favors NetRoadshow as once customers are lost, they may never return. Carrrandi was given fair notice of her contractual obligations, and flagrantly violated them anyway.

### 4. The Public Interest Favors NetRoadshow's Requested Injunctive Relief.

The public interest favors the Court granting a temporary restraining order and preliminary injunction to uphold basic notions of contractual obligations and, here, the correlating confidentiality, even under the pre-Georgia Restrictive

6

Covenant Act regime. *Ferrero*, 923 F.2d at 1449 (holding that the public interest balancing between free competition and enforcing restrictive covenants "ha[d] already been performed by the Georgia legislature when it presumed that injunctive relief is the appropriate remedy for a violation of this type of covenant," citing the old O.C.G.A. § 13-8-2.1(g)(1)). *See Durham v. Stand-By Labor of Ga., Inc.*, 230 Ga. 558, 563 (1973) ("[W]hen a duty has been imposed upon an employee pursuant to contract not to disclose confidential business information upon termination of employment, public policy is swung in favor of protecting these commercial intangibles and of preventing unfair methods of exploiting them in breach of duty."); *see also Rollins Protective Servs. Co. v. Palermo*, 249 Ga. 138, 142 (1982)).

### III.   CONCLUSION

For all these reasons, NetRoadshow requests that the Court grant a preliminary injunction requiring the following:

(a) requiring Carrandi to cease use of and return any confidential information and other property, including documents and electronic copies of documents belonging to NetRoadshow; and

(b) prohibiting Carrandi from further breaching its contract with NetRoadshow, including her employment with Finsight.

Respectfully submitted, this 5th day of January 2024.

        **KREVOLIN & HORST, LLC**

        */s/ Kana A. Caplan*
        Kana A. Caplan
        Georgia Bar No. 612805
        Taylor A. Cressler
        Georgia Bar No. 664099
        1201 W. Peachtree Street, NW
        Suite 3250, One Atlantic Center
        Atlanta, GA 30309
        (404) 888-9700
        (404) 888-9577 (facsimile)
        caplan@khlawfirm.com
        cressler@khlawfirm.com
        *Attorneys for Plaintiff NetRoadshow, Inc.*