## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **NETROADSHOW, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION FILE** |
| **vs.** | ) | **NO. 1:23-cv-05697-ELR** |
| | ) | |
| **LISA CARRANDI,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT LISA CARRANDI'S REPLY IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

Defendant Lisa Carrandi ("Ms. Carrandi") files this reply in support of her motion for summary judgment on Plaintiff NetRoadshow, Inc.'s ("NRS") Complaint [Doc. 1-1] and on her Counterclaim [Doc. 16], showing this Court as follows:

### A. *The Noncompete's Scope of Prohibited Activities is Unenforceably Broad and Indefinite.*

There is a wealth of Georgia law interpreting and applying the standards for enforcing restrictive covenants entered into prior to the enactment of the GRCA. Due to Georgia's then-existing "strong public policy disfavoring contractual restraints on competition and trade," construction of non-competition agreements ancillary to contracts of employment are subject to a unique set of case law which

1

construes the terms of a restrictive covenant "against the background of this public policy." Atlanta Ctr. Ltd. v. Hilton Hotels Corp., 848 F.2d 146, 148 (11th Cir. 1988).

Therefore, it is telling that in urging the Court to look to the "subsequent words or actions of the parties" to resolve the admitted ambiguity in the Agreement's scope of prohibited activities, NRS relies *exclusively* on cases that do not involve the interpretation of restrictive covenants. [Doc. 69, at 8.] See Sanders v. Com. Cas. Ins. Co., 226 Ga. App. 119, 119 (1997) (contract involving contract work on a sidewalk construction project); In re Al-Karim, Inc., 529 B.R. 366, 375 (Bankr. N.D. Ga. 2015) (bankruptcy case involving the enforceability of a lease agreement); Payne v. Savannah Coll. of Art & Design, Inc., 81 F.4th 1187, 1191 (11th Cir. 2023) (considering the enforceability of an arbitration provision). These cases simply do not apply to restrictive covenants ancillary to contracts of employment.

Essentially, NRS asks the Court to blue-pencil the Agreement to define the long list of services that Ms. Carrandi performed on its behalf over the course of 18 years of employment. That is unambiguously impermissible, since "Georgia courts allow no reformation or blue-penciling of a covenant ancillary to employment agreements to allow enforceability of at least some of the otherwise overbroad covenant." Siech v. Hobbs Grp., LLC, 198 F. App'x 840, 842 (11th Cir. 2006). NRS has not cited a single case in which a Georgia court looked to the "subsequent words

or actions of the parties" to define the scope of prohibited activities in a restrictive covenant, where those activities were not defined in the text of the agreement.

Instead, NRS alleges that "Georgia courts have blessed language similar to that in the Employee Agreement" by citing to a number of cases enforcing agreements that are markedly different from the one at issue here. [Doc. 69, at 9.] In support of this argument, NRS relies primarily on Reardigan v. Shaw Indus., Inc., 238 Ga. App. 142 (1999), where the Georgia Court of Appeals upheld a restrictive covenant that prohibited the employee from competing "by engaging or attempting to engage in the business of ***buying, selling and installing carpet and other floor coverings for residential or commercial uses***, in circumstances where your responsibilities and duties are substantially similar to those performed by you for [the employer]." Id. at 142 (emphasis supplied). In listing "buying, selling and installing carpet and other floor coverings for residential or commercial uses," the restrictive covenant provided a description of the activities to be restricted. Id.

The employee in Reardigan did not argue that the scope of prohibited activities was undefined, as it is in this case. Instead, he contended that it was overbroad because "it forbids him to sell carpet for residential uses although his 'main focus was commercial,' that it unduly restricts the products he is permitted to sell, and that it prohibits him from 'installing' carpet, which he contends he never

undertook for Shaw." Id. at 145. But the Court found that this list of prohibited activities was further limited by the provision stating that he was only forbidden from performing those activities "in circumstances where [his] responsibilities and duties are substantially similar to those performed by [him]" for Shaw. Id.

Thus, in Reardigan the restrictive covenant included a list of prohibited activities, and then *limited* that restriction with the caveat that the employee was only prohibited from performing those activities in circumstances "substantially similar" to his responsibilities with his former employer. Conversely, in this case the word "comparable" is the only attempt to define the "services" Ms. Carrandi is prohibited from performing. Reardigan does not suggest that it would be enough for a restrictive covenant to prohibit "substantially similar" services without defining any specific services to be prohibited, and it certainly does not offer any support for the "comparable" language used in the Noncompete in this case.

In Sysco, which NRS also cites, the noncompetition agreement prohibited the employee from performing services which were the "same or substantially similar to employee's duties[1] for Sysco *as described in this agreement and its incorporated exhibits*." Sysco Food Servs. of Atlanta, Inc. v. Chupp, 225 Ga. App. 584, 584 (1997)

---

[1] The Court should note that NRS's citation of this case misleadingly ends the quote here, conspicuously omitting the reference to the description of the employee's duties appearing in the agreement and its exhibits. [Doc. 69, at 10-11.]

(emphasis added). Again, the precise problem with the Noncompete in this case is that Ms. Carrandi's job duties for NRS were *not* "described in th[e] agreement [or] its incorporated exhibits." NRS's citation to a case where an agreement *did* describe the employee's job duties only serves to illustrate the level of detail necessary to draft an enforceable restrictive covenant. That detail is absent here.

Likewise, NRS relies on <u>Heinemann</u>, in which the specific language of the agreement prohibited the employee from performing "the services that Employee performs for Company (as set forth in Section 6.1(a))." <u>Elec. Data Sys. Corp. v. Heinemann</u>, 217 Ga. App. 816, 823 (1995) (with dissent based on the position that Section 6.1(a) was still overbroad because it "defines those services in a circular fashion as 'any of the products and services that the Company provides to its Customers'"). Despite the dissent's concerns, the majority in <u>Heinemann</u> found the noncompete reasonable specifically because it purported to limit the prohibited activities to those which were the "same" as those defined in the agreement. <u>Id.</u> at 820. That case offers no support to NRS, which seeks to enforce a noncompetition agreement that does not purport to define the scope of prohibited activities at all—even in a "circular fashion."

NRS also cites <u>Moore v. Preferred Rsch., Inc.</u>, in which the Court of Appeals enforced a licensing agreement by looking to the agreement itself to define the scope of prohibited activities:

> The restrictive covenant in this case prohibits plaintiffs from engaging in a "similar business to that licensed and established hereunder" within a certain geographical area. To determine what activities are thus restricted, one must look to other provisions of the agreement which define the business activities licensed under the agreement. One of the preamble paragraphs of the agreement states that the licensed techniques and procedures relate to "the fields of courthouse records research and verification, credit investigations, examination of records effecting title to real estate and personal property *and related services*...."

191 Ga. App. 26, 26–27 (1989) (emphasis in original).

Thus, the Court found that "[b]y definition, only those activities licensed by the agreement are restricted." <u>Id.</u> at 27. The Court interpreted the phrase "and related services" to define "the activities which the plaintiff was licensed to perform *under the agreement.* Therefore, when read in conjunction with the covenant not to compete, the restricted activities are synonymous with, not broader than, the licensed activities." <u>Id.</u> at 28. The "activities" involved in <u>Moore</u> are not totally analogous to this case, since <u>Moore</u> involved a licensing agreement, not an employment agreement. <u>Id.</u> Nonetheless, <u>Moore</u> does not sanction the restrictive covenant in this case, which purports to prohibit activities "comparable to," and thus inevitably broader than, a completely undefined scope of activities.

Finally, NRS cites <u>Pierce v. Indus. Boiler Co.</u>, where the Georgia Supreme Court found that, because the employment agreement prevented the employee from working for a competing business in the *same* capacity as that of his employment with the company, the agreement only prohibited him from acting as a "salesman of boilers" for a competitor. 252 Ga. 558, 558 (1984). NRS's position in this case—that Ms. Carrandi should be prohibited from working as a salesperson for a competitor, despite never holding that position at NRS—distinguishes this case from <u>Pierce</u>.

Unlike <u>Pierce</u>, the Noncompete in this case does not just purport to prevent Ms. Carrandi from performing the "same" job as the one she performed for NRS; it also does not limit itself to prohibiting "substantially similar" or even "similar" jobs. Instead, NRS attempts to prohibit Ms. Carrandi from performing any services which are "comparable" to any of the services she performed over the course of 18 years, in a variety of job titles, without any contractual provision defining the services "comparable" to the ones she should be prohibited from performing. NRS has not cited a single Georgia case enforcing a restrictive covenant as broad or indefinite as the one at issue in this case.

**B. The Noncompete's Territorial Restriction is Overly Broad.**

NRS's attempt to justify the extraordinarily broad territorial restriction in this case should likewise fail. In falsely representing to this Court that "the Georgia

Supreme Court greenlit a broader territorial restriction than the one contained in the Employee Agreement" NRS egregiously misconstrues the restrictive covenant in this case as only covering "*a* 150-mile radius around *a* city," apparently hoping the Court will forget that the Noncompete applies to *three* 150-mile radii around *three* cities. [Compare Doc. 60, at 15 (emphasis supplied) and Doc. 1-1, at 24.]

If NRS had support for its contention that the Noncompete's geographic territory "is not even the largest area Georgia courts have held as reasonable," it would not need to misrepresent the scope of the restricted territory at issue in this case. [Doc. 60, at 15.] Instead, NRS hopes the Court will believe that the *one* 200-mile radius at issue in Creel, which the Supreme Court described as an "unusually large geographical restriction," covers a larger area than the *three* 150-mile radii at issue in this case. [Id., citing Nat'l Settlement Assocs. of Georgia, Inc. v. Creel, 256 Ga. 329, 331 (1986)]. One need not be a mathematician to see the flaw in this argument. Ms. Carrandi is not aware of any Georgia case enforcing a territorial restriction as broad as the one at issue here, and NRS has cited none.

NRS also attempts to distinguish the numerous cases Ms. Carrandi has cited for the proposition that a permissible territorial restriction must be "closely tied to the area in which the employee actually worked," see, e.g, Dent Wizard Int'l Corp. v. Brown, 272 Ga. App. 553, 556 (2005), by arguing that "those cases involved the

provision of in-person services—services that quickly become less competitive the further one moves away." [Doc. 69, at 15.] But NRS has not cited any case law in support of its argument that employees who travel or work remotely should be subject to a different standard for the reasonableness of a geographic restriction. Remote work and travel are not new; if Georgia courts intended for some other standard to apply to such employees they would have so held. NRS is not entitled to the enforcement of such an extraordinarily broad territorial scope—which is unambiguously tied to its own offices, not where Ms. Carrandi actually worked—just because she traveled to perform some of her job duties.

Nonetheless, NRS argues that Georgia's rules for the reasonableness of geographic restrictions are insufficient to protect its interests because Ms. Carrandi "oversaw the servicing of every NetRoadshow client," and "[t]hus, where Ms. Carrandi worked and where NetRoadshow did business must be coextensive." [Doc. 69, at 18.] First, the allegation that Ms. Carrandi "oversaw the servicing of every NetRoadshow client" is a factual allegation without any citation to supporting evidence, which the Court should disregard. But perhaps more to the point, NRS is asking the Court to blur the lines between a non-competition agreement and a non-solicitation agreement by arguing that the location of Ms. Carrandi's employment should include any place where any of NRS's *clients* are located. But this is exactly

why non-solicitation agreements exist: to reach beyond the scope of the employee's place of employment and protect the employer's relationships with its clients, wherever those clients may be. That is not the function of a non-competition agreement.

Because the Noncompete's scope of prohibited activities and geographic territory are both impermissible under Georgia law, Ms. Carrandi is entitled to summary judgment on NRS's breach of contract claim.

### C. NRS Has Failed to Present Evidence Creating a Genuine Question of Material Fact as to Ms. Carrandi's Alleged Breach of Contract.

As shown above, Ms. Carrandi is entitled to summary judgment purely on legal grounds because the contract NRS seeks to enforce is unenforceable as a matter of law. The Court has already agreed with Ms. Carrandi on this point. [Doc. 51, at 10-12.] But even if the Court decided to reverse course on the enforceability of the Noncompete, Ms. Carrandi is also entitled to summary judgment because NRS has failed to create a genuine issue of material fact as to its breach of contract claim.

If the Agreement is deemed enforceable, NRS has the burden of proving that Ms. Carrandi has breached the Noncompete by performing services for Finsight that are "comparable" to those she performed for NRS. Ms. Carrandi has submitted testimony illustrating that her job duties at Finsight are very different from her job duties at NetRoadshow by offering detailed descriptions of her job titles and

responsibilities for each company. [Doc. 42.] In response, NRS attempts to discredit this evidence by calling it "self-serving" and "uncross-examined," arguing that it "need[s] to be vetted and sifted before the jury." [Doc. 69, at 19, 21.]

Discovery is over. NRS has the burden of proof on this claim, and it had four months to use the normal discovery procedures to develop evidence in support of its claims, and to vet, sift, and cross-examine Ms. Carrandi's testimony. Its failure to develop evidence rebutting her direct testimony on this matter does not give it an escape hatch to avoid its burden at summary judgment. The only ostensible evidence NRS has presented in this case is offered through the declarations of its own CEO and lawyer, neither of whom have established the factual basis for their personal knowledge of the testimony offered therein. [Docs. 13-1 & 70.] Ms. Carrandi has filed objections to both declarations, and incorporates those objections herein by reference. [Docs. 14 & 74.]

The Federal Rules of Evidence dictate that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Accordingly, a declaration may "only be considered to the extent that it is based on personal knowledge." Glock v. Glock, 150 F. Supp. 3d 1297, 1301 (N.D. Ga. 2015). Because Mr. Hammond has not offered any basis for his knowledge of Ms. Carrandi's job duties, it is impossible

11

for the Court to determine whether it is based on hearsay, direct personal involvement, speculation, or any other source, admissible or inadmissible. [Doc. 13-1.] Likewise, NRS's lawyer does not have the personal knowledge necessary to authenticate any of the documents attached to her declaration, or to qualify any of those documents for any hearsay exception. [Doc. 71.]

Trial courts can only consider evidence at summary judgment if the proponent of that evidence shows that it can be "reduced to admissible evidence at trial" or "reduced to admissible form." Macuba v. Deboer, 193 F.3d 1316, 1323 (11th Cir. 1999). NRS has not met this burden, and thus the Court should not consider the Declaration of Brad Hammond or the Declaration of Kana A. Caplan in deciding this motion. Additionally, counsel's statements in a brief "do not suffice as evidence to defeat a motion for summary judgment." Evanston Ins. Co. v. DCM Contracting, Inc., 441 F. Supp. 3d 1336, 1343 (N.D. Ga. 2020), citing Travaglio v. Am. Express Co., 735 F.3d 1266, 1270 (11th Cir. 2013). Because NRS has not carried its burden of identifying specific evidence which will be admissible at trial and is sufficient to create a genuine dispute of material fact, Ms. Carrandi is entitled to summary judgment.

**D. The Parties Agree That There is No Factual Dispute as to Ms. Carrandi's Counterclaim.**

Both parties agree that there is no factual dispute as to Ms. Carrandi's Counterclaim. [Doc. 69, at 22.] Indeed, the Counterclaim is subject to cross-motions for summary judgment, and Ms. Carrandi incorporates her response to NRS's motion for summary judgment herein by reference. [Doc. 71.] In that brief, Ms. Carrandi showed that the Employment Agreement's choice of law provision expressly applies only to the terms of the Agreement itself, and thus the Counterclaim (which does not seek to enforce any rights under the Agreement) is subject to the principle of *lex loci delicti*, which requires the Court to apply the law of the forum where the injury was suffered—in this case, California law. [Id. at 7-8, citing, e.g., Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1162 (11th Cir. 2009) and Harvey v. Merchan, 311 Ga. 811, 813–14 (2021)].

Contrary to NRS's suggestion in its response brief, Ms. Carrandi did not offer NRS's employee handbooks to create a fact issue—both parties agree that there is none—but in anticipation of NRS's argument that it should not be subject to California law because it was "surprised" that its out-of-state employees would be subject to the protection of their own state laws. [Doc. 65, at 24; Doc. 71, at 13.] It absolutely was not surprised by this reality of employing out-of-state employees, which is reflected in its own employment materials. Ms. Carrandi will decline to

repeat the remaining arguments on this issue here, as they have been sufficiently briefed. [See generally Doc. 71.]

However, it is worth pointing out that, if the Court grants Ms. Carrandi's motion for summary judgment on NRS's breach of contract claim (which it should), it will be faced with two options: issue a judgment on Ms. Carrandi's state law claims, or decline supplemental jurisdiction over those claims and transfer them to California. Under 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction over state law claims when they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . ." 28 U.S.C. § 1367(a) (emphasis supplied).

District courts "may decline to exercise supplemental jurisdiction over a claim" when (1) the state law claim raises a novel or complex issue of state law, (2) the claim substantially predominates over any claims that the district court has original jurisdiction over, (3) the court has dismissed all the other claims that it has original jurisdiction over, or (4) there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). Any one of these factors is sufficient to give the district court discretion to decline supplemental jurisdiction, but prior to declining jurisdiction under § 1367(c)(4), a court must consider the discretionary factors articulated in United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966), including

14

comity, convenience, fairness, and judicial economy. <u>Sutherland v. Glob. Equip. Co.</u>, 789 F. App'x 156, 161–62 (11th Cir. 2019).

The Court has original jurisdiction over NRS's state law breach of contract claim, and supplemental jurisdiction over Ms. Carrandi's Counterclaim arising under California law. While the Court is free to exercise supplemental jurisdiction over Ms. Carrandi's Counterclaim in the event it dismisses NRS's breach of contract claim, it also has the discretion to decline jurisdiction under 28 U.S.C. § 1367(c) and allow a California court to interpret and apply the novel state law on which Ms. Carrandi's claims are based.

## **<u>CONCLUSION</u>**

Based on the foregoing authority, Ms. Carrandi respectfully requests that the Court enter summary judgment in her favor on all claims.

Respectfully submitted this the 2nd day of August, 2024.

*/s/ Mary Ellen Lighthiser*
Michael D. Flint
Georgia Bar No. 264725
Mary Ellen E. Lighthiser
Georgia Bar No. 105407
*Attorneys for Lisa Carrandi*

MCCLURE & KORNHEISER, LLC
6400 Powers Ferry Road NW, Suite 150
Atlanta, GA 30339
Telephone:   (678) 388-2680
E-mail:       mflint@mcclurelegal.com
                  mel@mcclurelegal.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that

the foregoing brief was prepared in Times New Roman 14-point font, in compliance

with Local Rule 5.1(B).

This 2nd day of August, 2024.

*/s/ Mary Ellen Lighthiser*
Mary Ellen Lighthiser
Georgia Bar No. 105407

MCCLURE & KORNHEISER, LLC
6400 Powers Ferry Road NW
Suite 150
Atlanta, GA 30339
Telephone:   (678) 388-2680
E-mail:       mel@mcclurelegal.com

## CERTIFICATE OF SERVICE

I certify that on August 2, 2024 I filed the within and foregoing DEFENDANT LISA CARRANDI'S REPLY IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT using the CM/ECF System for the federal District Court for the Northern District of Georgia, which will provide electronic service to all counsel of record, and by statutory electronic service.

This the 2nd day of August, 2024.

/s/ Mary Ellen Lighthiser
Mary Ellen Lighthiser
Georgia Bar No. 105407

McClure & Kornheiser, LLC
6400 Powers Ferry Road NW
Suite 150
Atlanta, GA 30339
Telephone:   (678) 388-2680
E-mail:        mel@mcclurelegal.com