**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **NETROADSHOW, INC.,** | ) | |
| | ) | |
| **Counterclaim Defendant,** | ) | |
| | ) | **CIVIL ACTION FILE** |
| **vs.** | ) | **NO. 1:23-cv-05697-ELR** |
| | ) | |
| **LISA CARRANDI,** | ) | |
| | ) | |
| **Counterclaimant.** | ) | |

## COUNTERCLAIMANT LISA CARRANDI'S SECOND MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Lisa Carrandi ("Ms. Carrandi") moves this Court to enter summary judgment in her favor on her Counterclaim (Doc. 16), since the doctrine of *lex loci delicti* requires the application of California law, and there is no genuine question of material fact as to her right to recover under Cal. Bus. & Prof. Code § 16600.5.

In support of this motion, Ms. Carrandi shows this Court as follows:

## INTRODUCTION

After two years of defending herself from the attempted enforcement of a void restrictive covenant, Lisa Carrandi is now entitled to the protection her own state's legislature has expressly provided. Ms. Carrandi has asserted a Counterclaim seeking recovery under the law of California, where she has lived for

1

the past twelve years, for the damages and attorneys' fees incurred as a result of her former employer's attempt to enforce that void restriction. The Eleventh Circuit Court of Appeals has held that Ms. Carrandi's Counterclaim sounds in tort, and thus Georgia's choice of law rules require this Court to apply the doctrine of *lex loci delicti* to determine which state's law governs that claim. That doctrine requires application of the law of the state "where the injury sustained was suffered," which can only be California. Because California law governs the Counterclaim, and because there is no factual dispute as to Ms. Carrandi's right to recovery under California law, summary judgment must be entered in her favor.

## FACTUAL & PROCEDURAL BACKGROUND

From May 3, 2005 until July 31, 2023, Lisa Carrandi worked for NetRoadshow, Inc. ("NRS"), a company providing internet-based management presentations, commonly referred to as electronic roadshows, for major investment banking clients. (Doc. 13-1, at ¶ 3.) When she accepted her job as an Account Manager in 2005, she was required to sign an Employment Agreement which included a void non-compete provision ("the Non-Compete") and a choice-of-law provision stating that "this Agreement and the rights of Company and Employee hereunder shall be governed by and construed in accordance with the laws of Georgia." (Doc. 1-1, at 23.)

2

For the first eight years of her employment, Ms. Carrandi was a resident of New York, but in 2013 she moved to California, where she set up a home office and managed the NRS client services team remotely. (Doc. 42, at 2, 4.) Ms. Carrandi has never lived in Georgia. Ms. Carrandi had a number of job titles and duties over the course of 18 years, but by the summer of 2023, she had been demoted and NRS had recently completed several rounds of layoffs in the client services team, where she worked. (Doc. 42, at 7.) Believing that she would likely be terminated in the next round of layoffs, Ms. Carrandi resigned from NRS on July 31, 2023. (Id.) On September 5, 2023, she accepted a sales position at a financial services company called Finsight Group, Inc., with the job title Director of Business Development in the Bay Area. (Id. at 9.)

On November 30, 2023, NRS sued Ms. Carrandi for her purported breach of the Non-Compete, seeking injunctive relief in addition to damages. (Doc. 1-1.) Ms. Carrandi was personally served with the Complaint, Motion for a Temporary Restraining Order, and supporting documents at her home in Novato, California on December 5, 2023. (A true and correct copy of the "Affidavit of Service" filed in the Superior Court of Fulton County, Georgia is attached hereto as "Exhibit A.") On January 1, 2024, Cal. Bus. & Prof. Code § 16600.5 went into effect, giving a private right of action to California employees whose employers attempted to

enforce restrictive covenants against them, entitling them to "injunctive relief or the recovery of actual damages, or both," in addition to "reasonable attorneys' fees and costs." Cal. Bus. & Prof. Code § 16600.5(e). The *vast majority* of NRS's continuing attempts to enforce the Non-Compete have taken place after that date.

On January 8, 2024, Ms. Carrandi filed her Verified Answer and Counterclaim, seeking a permanent injunction, damages, and attorneys' fees and costs under Cal. Bus. & Prof. Code § 16600.5(e) ("the Counterclaim"). (Doc. 16.) On January 29, 2024, NRS moved to dismiss the Counterclaim for failure to state a claim for which relief can be granted. (Doc. 25.) Ms. Carrandi opposed that motion but filed a motion to voluntarily dismiss the Counterclaim without prejudice in order to pursue it in California state court, since it involved novel and complex issues of state law. (Doc. 35.) Three months later, the Court had not ruled on either of the motions related to the Counterclaim, and the Northern District of California (where NRS had removed the state court action) transferred the California action to this Court pursuant to the first-to-file rule. Thus, on May 21, 2024 Ms. Carrandi withdrew her motion to voluntarily dismiss the Counterclaim and moved to consolidate the two actions instead. (Docs. 62 & 66.)

In the interim, this Court held on March 7, 2024 that the Non-Compete that NRS sought to enforce was so broad and indefinite that it was "void on its face"

under Georgia law. (Doc. 51, at 6, 12, 13.) On September 10, 2024, the Court granted NRS's motion to dismiss Ms. Carrandi's Counterclaim, finding that the Employment Agreement's choice-of-law provision prevented the application of California law. (Doc. 79.) On January 7, 2025, the Court granted summary judgment in Ms. Carrandi's favor on all of NRS's claims, reiterating its holding that the Non-Compete was "void on its face" and thus unenforceable. (Doc. 82, at 3, 7-8.) However, the Court denied Ms. Carrandi's motion for summary judgment on her Counterclaim, finding that motion moot in light of its grant of NRS's motion to dismiss. (Doc. 82, at 10, 14.)

Ms. Carrandi appealed the dismissal of her Counterclaim. The Eleventh Circuit held that Ms. Carrandi's Counterclaim sounds in tort, and "[f]or that reason, the choice-of-law provision does not require that Georgia law govern Carrandi's counterclaim." NetRoadshow, Inc. v. Carrandi, Appeal No. 25-10388, 2025 WL 2435411, at *4 (11th Cir. Aug. 25, 2025). The Eleventh Circuit therefore reversed the dismissal of Ms. Carrandi's Counterclaim and remanded the case back to this Court, with instructions to apply the doctrine of *lex loci delicti* to determine which state's law governs. Id.

At the end of this month, this case will have been pending for two years. The personal, professional, and financial impact this case has had on Ms. Carrandi

during this time has been immeasurable. (A true and correct copy of the Declaration of Lisa Carrandi is attached hereto as "Exhibit B.") Ms. Carrandi's defense and the prosecution of the Counterclaim has incurred well in excess of $200,000 in attorneys' fees and litigation costs. (Id. at ¶ 4.) Moreover, the ongoing litigation hindered her work performance and ultimately resulted in her leaving Finsight in December 2024. (Id. at ¶ 5.) The litigation also had a grave impact on Ms. Carrandi's professional reputation and employment prospects. (Id. at ¶¶ 6-7, 10.)

After leaving Finsight, she found it difficult to find new employment, in part because this lawsuit featured prominently in internet search results for her name. (Id. at ¶ 6.) Ms. Carrandi estimates that she has sustained well over six figures in damages resulting from lost earnings and stalled career progression. (Id. at ¶ 7.) The emotional toll this litigation has had on her life has been even more damaging. Ms. Carrandi has suffered intense anxiety, panic attacks, and stress-related health problems that have negatively impacted her relationships with her husband, family, and friends. (Id. at ¶¶ 8-10.)

Ms. Carrandi has incurred significant damages as a result of NRS's actions, and under her own state's law, she has a right to recover those damages.

## <u>ARGUMENT & CITATIONS OF AUTHORITY</u>

Ms. Carrandi is entitled to summary judgment in her favor, since there is no genuine dispute of material fact as to her right to recovery under the Counterclaim. Because the Eleventh Circuit has determined that Ms. Carrandi's Counterclaim sounds in tort, Georgia's *lex loci delicti* rule governs the choice of law. Under that doctrine, the controlling question is where the injury was suffered, and the undisputed record establishes that all of Ms. Carrandi's injuries occurred in her home state of California. There is no factual dispute related to Ms. Carrandi's right under California law to recover damages and attorneys' fees incurred as a result of NRS's two-year-long attempt to enforce the void Non-Compete. As such, judgment should be entered in Ms. Carrandi's favor.

### A. *California Law Applies Under the Doctrine of Lex Loci Delicti*

Under Georgia's choice-of-law rules, California law governs Ms. Carrandi's Counterclaim because California is the *lex loci delicti*. That doctrine mandates that "a tort action is governed by the substantive law of the state where the tort was committed." <u>Dowis v. Mud Slingers, Inc.</u>, 279 Ga. 808, 809 (2005). The place where the tort was committed, or "the *locus delicti,* is the place where the injury sustained was suffered rather than the place where the act was committed, or, as it is sometimes more generally put, it is the place where the last event necessary to

make an actor liable for an alleged tort takes place." <u>Bullard v. MRA Holding, LLC</u>, 292 Ga. 748, 750–51 (2013). <u>See also</u> <u>Harvey v. Merchan</u>, 311 Ga. 811 (2021) ("The place where a tort was committed is 'the place where the injury sustained was suffered rather than the place where the act was committed.'"); <u>Auld v. Forbes</u>, 309 Ga. 893, 894 (2020) ("The place where the tort was committed, or, the locus delicti, is the place where the injury sustained was suffered, rather than the place where the act was committed.").

There is no real dispute as to where the injury in this case was suffered. Ms. Carrandi could not have suffered any injury anywhere but California, since she lives in California and did not even visit Georgia during the pendency of this case. Ms. Carrandi was personally served with the lawsuit at her home in Novato, California. (Exh. A.) Over the two years that this lawsuit has been pending, all of Ms. Carrandi's participation has taken place from California. She is seeking recovery of damages she sustained while living in California, which include but are not limited to attorneys' fees and legal expenses incurred in the defense of the underlying action. The emotional distress, financial struggles, and unemployment she has suffered as a result of NRS's wrongful attempts to enforce an 18-year-old, void Non-Compete *all* took place in California, where Ms. Carrandi lives. (Exh. B.)

In abiding by the rule of *lex loci delicti*, the Supreme Court of Georgia has acknowledged that "a state has an interest in wrongs committed within its boundaries." Dowis, 279 Ga. at 812. In a multi-state defamation action filed by a journalism organization, the "the place of the wrong" was determined to be the "state or states where the plaintiff is domiciled." Veritas v. Cable News Network, Inc., 121 F.4th 1267, 1274 n.10 (11th Cir. 2024). In the case of an organization with two states of domicile, the relevant question was where the plaintiff "felt the alleged injury 'more principally.'" Id. See also Bullard, 292 Ga. at 751 (in commercial appropriation of likeness claim where the initial video was shot in Florida and distributed nationally, the injury was sustained in Georgia, since that is where the plaintiff lived and "where she would have sustained any injury that resulted from the distribution of her image").

Accordingly, the question is where Ms. Carrandi experienced the wrong NRS committed, and the undisputed evidence establishes that place to be California, her state of residence. As such, California is the *lex loci delicti*, and under Georgia's conflict of laws rules, California law governs Ms. Carrandi's Counterclaim.

**B. *The Public Policy Exception Does Not Apply.***

As the Eleventh Circuit pointed out, Georgia recognizes a public policy exception to *lex loci doctrine*, which applies only "if the out-of-state law is so 'radically dissimilar to anything existing in our own system of jurisprudence' that it would 'seriously contravene' the policy embodied in Georgia law." <u>Auld</u>, 309 Ga. at 896. However, the Supreme Court of Georgia has emphasized that this exception is narrow, and "[a] mere difference in law is not sufficient to justify this exception." <u>Id.</u> (disapproving of cases where the public policy exception has been construed more liberally). The public policy exception cannot prevent the application of California law in this case, where California law is *consistent* with Georgia's public policy at the time the Employment Agreement was signed.

Georgia law is clear that a difference in the law or measure of damages available is not enough to merit the public policy exception to *lex loci delicti*. Applying <u>Auld</u>, the Georgia Court of Appeals has held that a Georgia court was required to apply South Carolina law to a plaintiff's punitive damages claim under the doctrine of *lex loci delicti*, even though "South Carolina law permits the recovery of punitive damages in wrongful death claims when Georgia does not, and South Carolina allows the recovery of a greater amount of punitive damages under certain circumstances." <u>United Parcel Serv. of Am., Inc. v. Whitlock</u>, 366

10

Ga. App. 542, 550–51 (2023). The Court held that "[t]hese facts alone do not demonstrate that South Carolina law is 'radically dissimilar' from Georgia law," since "it is clear that a mere difference in law or the measure of damages does not violate this standard." Id.

The public policy relevant to the Non-Compete at issue in this case is reflected in the law that was in effect when the parties signed the Employment Agreement in 2005. This district has interpreted Georgia law to hold that courts should look to the state's public policy as it existed at the time the agreement was entered into in assessing whether a foreign state's law is contrary to Georgia public policy on restrictive covenants. Boone v. Corestaff Support Servs., Inc., 805 F. Supp. 2d 1362, 1368–70 (N.D. Ga. 2011) (Story, J.), citing Bunker Hill Int'l Ltd. v. Nationsbuilder Ins. Servs., Inc., 309 Ga. App. 503 (2011), Cox v. Altus Healthcare & Hospice, Inc., 308 Ga. App. 28 (2011), and Gordon Document Prods., Inc. v. Serv. Techs., Inc., 308 Ga. App. 445 (2011). In 2005, Georgia and California had consistent public policies on restrictive covenants.

Before 2011, "Georgia law disfavored restrictive covenants, and the Georgia Constitution forbade the General Assembly from authorizing them." Am. Anesthesiology of Georgia, LLC v. Northside Hosp., Inc., 362 Ga. App. 350, 354–55 (2021). In fact, Georgia was "one of the very few states that [had] a public

policy that [had] historically disfavored restrictive covenants." Gallagher Benefit
Servs., Inc. v. Campbell, 528 F. Supp. 3d 1326, 1337 (N.D. Ga. 2021). See also
Dent Wizard Int'l Corp. v. Brown, 272 Ga. App. 553, 555 (2005) ("Generally,
contracts in restraint of trade or that tend to lessen competition are against public
policy and are void."); Atlanta Ctr. Ltd. v. Hilton Hotels Corp., 848 F.2d 146, 148
(11th Cir. 1988) ("The state of Georgia has expressed, both in its constitution and
in its statutory law, a strong public policy disfavoring contractual restraints on
competition and trade.").

While non-compete provisions in employment agreements were deemed
reasonable "partial" restraints where they were able to pass the state's "strict
scrutiny" test, Georgia maintained a clear public policy against unreasonable
restrictive covenants (like the Non-Compete at issue here) for over a century:

> [C]ontracts in unreasonable restraint of trade are contrary to public
> policy and void, because they tend to injure the parties making them,
> diminish their means of procuring livelihoods and a competency for
> their families; tempt improvident persons, for the sake of present gain,
> to deprive themselves of the power to make future acquisitions, and
> expose them to imposition and oppression; tend to deprive the public
> of services of [people] in the employments and capacities in which
> they may be most useful to the community as well as themselves;
> discourage industry and enterprise, and diminish the products of
> ingenuity and skill; prevent competition and enhance prices, and
> expose the public to all the evils of monopoly.

Atlanta Bread Co. Int'l v. Lupton-Smith, 285 Ga. 587, 588–89 (2009), citing Rakestraw v. Lanier, 104 Ga. 188, 194 (1898).

Thus, Georgia's "old" public policy governing the 2005 Non-Compete is entirely consistent with California's "policy in favor of open competition and employee mobility." Edwards v. Arthur Andersen LLP, 44 Cal.4th 937 (2008), legislatively adopted in Cal. Bus. & Prof. Code § 16600(b)(1). In Edwards, the Supreme Court of California held that "our courts have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility," and that "[t]he law protects Californians and ensures 'that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice.'" Edwards, 44 Cal. 4th at 946. The Court went on to explain that Section 16600 protects "the important legal right of persons to engage in businesses and occupations of their choosing." Id. This is the very same reasoning underlying the public policy that the Supreme Court of Georgia discussed in Atlanta Bread.

While Georgia did not provide a private right of action to employees forced to defend themselves from their employers' wrongful attempts to enforce void non-compete agreements in 2005, such a claim is not "radically dissimilar" from anything in Georgia law. Indeed, at least three Georgia statutes provide defendants

the right to recover damages and attorneys' fees as compensation for litigation that wrongfully attempts to dissuade lawful activity. For example, the stated objective of Georgia's Anti-SLAPP statute is to ensure that "the valid exercise of the constitutional rights of petition and freedom of speech should not be chilled through abuse of the judicial process." O.C.G.A. § 9-11-11.1(a). <u>See</u> <u>Wilkes & McHugh, P.A. v. LTC Consulting, L.P.</u>, 306 Ga. 252, 257 (2019) ("'Strategic lawsuits against public participation,' or 'SLAPPs,' are meritless lawsuits brought not to vindicate legally cognizable rights, but instead to deter or punish the exercise of constitutional rights of petition and free speech by tying up their target's resources and driving up the costs of litigation.").

In furtherance of its objective of protecting the exercise of litigants' constitutional rights, the Georgia legislature has mandated that attorneys' fees be awarded to a "prevailing party" filing an anti-SLAPP motion:

> In any action subject to subsection (b) of this Code section, a prevailing moving party on a motion to strike ***shall*** be granted the recovery of attorneys' fees and expenses of litigation related to the action in an amount to be determined by the court based on the facts and circumstances of the case.

O.C.G.A. § 9-11-11.1(b.1) (emphasis supplied).

Likewise, Georgia has enacted two statutes designed to prevent abuse of the judicial system in pursuit of improper purposes and to compensate defendants who

have been subjected to such abuse: O.C.G.A. § 9-15-14 and O.C.G.A. § 51-7-80, *et seq.* The latter abusive litigation statute creates a private right of action to a victim of abusive litigation and entitles the claimant "all damages allowed by law as proven by the evidence," including attorneys' fees, costs of litigation, and punitive damages where damages are not based solely on injured feelings. Coen v. Aptean, Inc., 307 Ga. 826, 840 (2020), citing O.C.G.A. § 51-7-83. Where attorneys' fees are the only damages suffered as a result of abusive litigation, litigants are instructed to seek recovery under O.C.G.A. § 9-15-14.

Thus, Georgia has long provided legal mechanisms for the recovery of damages and attorneys' fees where a litigant has used the judicial system to hinder others from exercising their legal rights. This is exactly the same type of mechanism that California created in enacting Cal. Bus. & Prof. Code § 16600.5. Because the California legislature recognizes "the important legal right of persons to engage in businesses and occupations of their choosing," Edwards, 44 Cal. 4th at 946, it allows its residents to recover damages and attorneys' fees from former employers who attempt to hinder the exercise of that important legal right.

Although Georgia has not enacted the same statutory right of action, "[a] mere difference in law is not sufficient to justify" the public policy exception to the doctrine of *lex loci delicti*. Auld, 309 Ga. at 896. The public policy underlying Cal.

Bus. & Prof. Code § 16600.5 is entirely consistent with Georgia's well-documented public policy in 2005. Thus, NRS cannot show that California law is "so 'radically dissimilar to anything existing in our own system of jurisprudence' that it would 'seriously contravene' the policy embodied in Georgia law" as it existed in 2005. Id.

In short, both Georgia and California shared the same underlying policy in 2005: restrictive covenants that unreasonably limit competition are void. California's more recent statutory remedy does not offend Georgia's public policy; it merely enforces the right to choose one's vocation through a legal mechanism that Georgia has likewise employed to protect the exercise of other legal rights. As such, the narrow public policy exception to the doctrine of *lex loci delicti* cannot operate to avoid the application of California law. Ms. Carrandi's Counterclaim seeks recovery for damages she suffered in California, and thus California law governs that claim under Georgia's choice of law rules.

## CONCLUSION

California law governs Ms. Carrandi's Counterclaim, since her state of residence is the place her injury was sustained. Moreover, the public policy exception cannot prevent the application of California law, because the private right of action created under Cal. Bus. & Prof. Code § 16600.5 is consistent with

Georgia public policy as it existed in 2005. Finally, there is no genuine dispute of material fact as to NRS's commission of a civil violation under Cal. Bus. & Prof. Code § 16600.5. As such, Ms. Carrandi is entitled to judgment as a matter of law on her Counterclaim, and respectfully requests that her motion for summary judgment be granted.

Respectfully submitted this the 13th day of November, 2025.

/s/ Mary Ellen Lighthiser
Michael D. Flint
Georgia Bar No. 264725
Mary Ellen A. Lighthiser
Georgia Bar No. 105407
*Attorneys for Lisa Carrandi*

MCCLURE & KORNHEISER, LLC
6400 Powers Ferry Road NW
Suite 150
Atlanta, GA 30339
Telephone:  (678) 388-2680
E-mail:        mflint@mcclurelegal.com
                  mel@mcclurelegal.com

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that the foregoing brief was prepared in Times New Roman 14-point font, in compliance with Local Rule 5.1(B).

This 13th day of November, 2025.

*/s/ Mary Ellen Lighthiser*
Mary Ellen Lighthiser
Georgia Bar No. 105407

MCCLURE & KORNHEISER, LLC
6400 Powers Ferry Road NW
Suite 150
Atlanta, GA 30339
Telephone:  (678) 388-2680
E-mail:      mel@mcclurelegal.com

## CERTIFICATE OF SERVICE

I certify that on November 13, 2025 I filed the within and foregoing *COUNTERCLAIMANT LISA CARRANDI'S MEMORANDUM OF LAW IN SUPPORT OF HER SECOND MOTION FOR SUMMARY JUDGMENT* using the CM/ECF System for the federal District Court for the Northern District of Georgia, which will provide electronic service to all counsel of record, and by statutory electronic service.

This the 13th day of November 2025
.

/s/ Mary Ellen Lighthiser
Mary Ellen Lighthiser
Georgia Bar No. 105407

McClure & Kornheiser, LLC
6400 Powers Ferry Road NW
Suite 150
Atlanta, GA 30339
Telephone:  (678) 388-2680
E-mail:       mel@mcclurelegal.com